In this case, it's even more clear cut than the previous one. The IJA denied the petitioner's assignment for lack of credibility. The IJA's credibility finding is exclusively based upon one discrepancy between the petitioner's testimony and his sworn statement The petitioner failed to mention to the immigration officer at the interview that he left his home country to avoid persecution due to his homosexuality. We urge the court to apply the analysis in SIN v. IMS 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. In that case, the BIA concluded that three aspects of SIN's claim warrant an adverse credibility determination. Among the three aspects, one is inconsistencies between SIN's airport statement and his claim asserted at the hearing. Just like the IJA did in this case, the BIA in SIN found that SIN had provided no plausible explanation for those inconsistencies. The court concluded in SIN that the airport statement on its own cannot substantiate an adverse credibility determination. All the factors supporting the court's conclusion in SIN are present in this case. The court's principal concern in SIN is that SIN did not speak English at the interview, and he was provided an interpreter who spoke Hindi, a language Mr. SIN spoke only a little. In this case, the petitioner did not speak English either, and he was provided with an interpreter in Mandarin. The petitioner made it clear at the hearing that his best language is Fuchao, and he did not really understand the interpreter whose service was used for both the interview and the hearing. The transcript is replete with examples of petitioner's linguistic difficulties, and the IJA, however, attributed difficulties in answering simple questions to his lack of formal education, but not to his inability to speak Mandarin fluently. Your Honor, there is evidence in record indicating that petitioner's inability to speak Mandarin is a manifestation of his lack of formal education. The record shows on page 238 that the Mandarin is taught only in school, and the people from Fujian, from Qianlong, that's where the petitioner is from, speaks a dialect completely different from Mandarin. Your Honor, I'm not raising a due process violation in this case, but again, as the court held in P v. Ashcroft, the case I just referred to in previous case, that even though there's no due process violation, but a faulty translation would undermine the evidence to support the immigration judge's credibility decision. The court in scene also shares the third-surface concern that the airport interview is not an application for asylum, and it does not necessarily contain questions designed to elicit the details of an asylum claim. The court observed in scene that since 17 question interview hardly provided an opportunity to explain its circumstances, and undue reliance on this perfunctory examination severely undermines the more exhaustive opportunities given to asylum applicants to develop their cases on the merits. In this case, Your Honor, the entire interview consists of eight questions, not even half of the number of questions in scene. And the petitioner's answers, as recorded by the immigration officer at the interview, consists of, I didn't count them here, Your Honor, only 29 words, and it just simply defies the principle of fairness that the outcome of this case hinges upon these 29 words. Your Honor, I also submit to the court that the sensitive nature of the subject in this case might also explain why the petitioner was silent as to his homosexuality when he first interviewed by an immigration officer shortly after his arrival in the United States. The court, in scene, quoted with approval from a third circuit case. I always have a problem pronouncing this word. Bill Sabra-Marin. You're not alone. I've never been able to pronounce that either. But it's repeatedly referred to in my brief. In that case, the court called an arriving alien who has suffered abuse during the interrogation sessions by government officials in his home country may be reluctant to reveal such information during the first meeting with government officials in this country. In this case, Your Honor, what is involved is homosexuality. And even in this country, it takes courage for someone to come out and to admit publicly that his or her unconventional sexual orientations. We have evidence in record, Your Honor, that the biggest fear for the gay people in China is that someone someday might find out about his or her homosexuality. So it's entirely understandable and reasonable for a petitioner to remain silent about the reason that he left China was to avoid persecution arising out of his homosexuality. Well, Your Honor, I'm more than happy to answer any of the questions you might have for me. Otherwise, I will just again reserve the remainder of my time for rebuttal. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is David McConnell. I am here today representing the respondent, Attorney General Ashcroft. You're not going to say that your case for rejection is stronger than the last case? No, I'm not going to start that way. But I do want to address the question of the initial statement made by the applicant in this case. Let me ask you right about that. I think I'm looking at that form from record, page 144. According to the form, the applicant is told, if you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance. You will have the opportunity to speak privately and confidentially to another officer about your fear or concern. That officer will determine if you should remain in the United States and not be removed because of that fear. Now, he answers yes to the fear questions. Why shouldn't he assume I'm going to talk to the next guy about why? And if that's the case, then how is it a discrepancy for him not to have disclosed his homosexuality and the reason for that fear during this interview? Well, that could, Your Honor, be a plausible explanation for why he didn't say anything, but I think there has to be evidence that that's true. What the immigration judge relies upon is his failure. And I'll read from the immigration judge's decision. Knowing full well that failure to disclose the reason or reasons for coming could result in being immediately excluded from this country, he indicated no fear of returning to his alleged homosexuality. That's just not true. He didn't know that failure to reveal the reason was going to cause him to be booted because he'd just been told if he says he has a fear, he'll go talk to another officer. Well, I think the form does advise him that U.S. immigration law does protect people from fear of persecution. The first question he has, the very first question he really is asked on that form is why did you leave your home country? He doesn't say anything about – I mean, it's clear it's not the first question on the form, but it's the first question that goes to the reasons why he came to the United States. And the first response out of his mouth is that he came basically for economic reasons. And I think that – I mean, that is significant because I think in credibility cases, I mean, it's – the immigration authorities have a difficult time in sorting out the claims that are valid ones and the claims that are not valid and where the petitioner is telling the truth and where not. And oftentimes the very first statement out of an applicant's mouth is the one that, you know, is really the true reason for the basis of the claim. Now, there's no question that there was an opportunity to develop the claim later. I mean, there was – in this process, what this document is is it's not text, strictly speaking, an airport interview in the same sense that it was in the same case. This is a statement taken in an expedited removal proceeding under Section 235B of the statute. Was this his first interview? Yes, it was, Your Honor. It was his first interview four days, I think, after his arrival in the United States. I don't understand how you can make that argument in light of what this Court said in Singh, let alone understand how you could have failed in the brief to discuss Singh and just say, but C.F. Singh is a Ninth Circuit case that deals with this issue at length, and you were aware of it. I don't mean you individually. I don't know whether you wrote the brief. Whoever wrote the brief was aware of Singh, was aware it was directly on point, and all it said was, well, the other case is a Third Circuit case, but C.F. Correct, Your Honor. I mean, I agree. I think Singh should have been discussed in greater detail in the brief, and I apologize that it wasn't. But when we're here now, forget the brief. It says, Singh says, finally, like the Court in whatever it is, will credit the more normative consideration that an arriving, quote, an arriving alien who has suffered abuse during interrogation sessions by government officials in his home country may be reluctant to reveal such information during the first meeting with government officials in this country. Here is Singh, assuming he even understood the question, initially denied having been persecuted despite admitting to the arrest, et cetera. The government argues that we should look to its response to the question about persecution. We cannot do so. And it explains why that first interview, and I think it was the same kind of form, is not a basis for making it credibility. Well, I agree. It does address the issue, Your Honor, but I don't read Singh as saying that initial statements like this are always or can never be used. Even if it could never be used, he said he was afraid of being persecuted on the Court. He said, I mean, when asked about that, when confronted about the statement at the hearing, he made a number of different assertions about it. I mean, he clearly seemed to be rather evasive when confronted with that statement. He said that first that he was confused. Then he said he did not know English, which was not correct because, of course, the interview was conducted in Mandarin. He said that he didn't dare tell someone about his fear of the communists or about the communists. It was even more vague than that. Then he said he did not know that the United States had freedom and he could speak freely here about his homosexuality. That's a perfectly good explanation. I mean, that's what we said in Singh, that they really were reluctant to say, am I homosexual, to the first government official you meet. Wouldn't you find that a reasonable position even in the absence of Singh? It's a plausible explanation, but I think the evidence has to support that explanation, and I don't think it does on this record. Plus, I think if I read Singh correctly, the airport statement was made. I'm sorry. What evidence supported that decision in Singh not to disclose the reason? Well, I think the key thing was that this was, you know, I was getting to this. I believe, if I read Singh correctly, this was the first time. I mean, Singh had just directly gotten off the plane. I think this took place four days after, four days after Chan's arrival in the United States. So clearly, I think he had an opportunity at that time to not be so afraid of the first official that stepped up. Well, that is a difference. That is different. You also seem to draw a difference in that this is a form and expedited removal case. But I think the form, as Judge Clifton has questioned about, may cut against you because of the statement, you'll have an opportunity to speak privately and confidentially to another officer about your fear or concern. Well, that statement is there because the way this process works, Your Honor, is that this initial assessment is an assessment of whether someone is admissible into the United States. And if the person expresses a fear of returning to his or her home country, then there is another credible fear interview that takes place. And if the person at that interview meets the fairly low threshold of explaining a credible fear, then the person gets to go to an immigration judge and present a full claim for asylum. It would be nice if the form said that. Well, I mean, I'm not being facetious because you're saying it says you may not have another chance, but it could also explain that if you do claim asylum, you will have the opportunity. If you don't claim that you have a fear of returning, it's something else. He did claim he had a fear of returning. He did. Did he get the other interview? Yes. As far as I know, he did, Your Honor. He must have because he's here, basically. If you express that fear, then the process proceeds. And we don't know what happened in that other interview? I was not. You're not contending that he – the record doesn't show that he – They mentioned it was homosexuality during that interview, and the record seems to indicate that. I don't know that the record – I don't see myself – Either way, if it does, it seems he couldn't have done better. If he didn't get that interview, it's – But in any event, you're not contending in the record that he misrepresented the facts at the second interview. No, that is not even – that second interview is not even in the record. I tried to ascertain where that is. And it says that that's the place you should disclose your homosexuality. Well, you know, again, I think it gets to the point, you know, by that time several weeks had gone down. You know, by that – or at least, I don't know if several weeks, but some time had passed between, you know, this interview and the credible fear interview. And I think the concept the immigration judge found important is that the first thing he said about coming to the United States was an omission of the basis for his claim. Right, but just looking at that form, why would you fear returning to your country if the – because you're race-plagued? I mean, there – well, that's not – I don't think it's necessarily inconsistency. You know, am I raised with pigs? I don't have much money. Do you have a fear of returning? Yes. But why – I mean, why did – the question was why did you leave? I mean, if you contrast that statement to, like, his declaration supporting his asylum claim, it starts with a political statement about – and it seems, like, much more sophisticated than this, you know, flat response. You know, when you sit cold with it, why did you leave? I left because my family was poor, essentially. But, I mean, if that were the only reason, you probably wouldn't answer yes to your fear of returning. Would you be harmed if you returned? Yes. I mean, as far as I know, China doesn't discriminate against pig-growers. Well, you know, I can't – clearly, I think it's – the natural response to something like that if somebody doesn't want to go back to his home country is probably yes to that question. And that, frankly, is enough to get you to the next step, to get you to the credibility. Let me ask you another question about Ventura. Yes. The – is there any basis other than the lack of credibility for denying the application here? Here? In this case, no. There's a lack of credibility of the applicant. And is there any reason, then, if – hypothetically – hypothetically, the court were to determine that there was no basis for the lack of credibility, would we be required under Ventura to deny? Well, yes, of course, I think you would, Your Honor. The immigration judge, as you indicate, reached no other issue. This is a claim, I think, based on the claim that this is a person who was persecuted because he was a member of a social group. I think the judge would have to address whether – address that claim, the social group claim, and whether the – and assuming he does agree that homosexuals would be a social group in China, whether he was mistreated or anything that happened to him occurred because of his membership in that social group or whether it was because, you know, he engaged in a homosexual act and was arrested for it. And, you know, just find out – figure out whether the evidence meets the other elements of the assignment. And I suppose he could even decide it as a matter of discretion, as in this case. Ordinarily, as you know, they usually turn on the eligible in China. Well, I just wondered because his statements were that not only was he homosexual but that that was the reason for the persecution. And the only question was whether his statements were credible. All right. Excellent. He did say, though, Your Honor, that, I mean, when asked about that, he said that the reason he was harmed and mistreated in custody was that he was poor and couldn't give money to the guards. He – All right. I just wanted to know if you believe we should read that. I do believe it should be read. Thank you. Thank you. Your Honor, if the court is going to reverse the BIA's – the IJS's finding on the credibility issue, I believe my client and I are more than happy to see that the case is remanded to the BIA with the instruction that to make a determination on whether or not he has met his burden of proof showing he's eligible based upon his homosexuality, given the fact that he is credible. I'm pretty – I'm very confident that the BIA will get it right the second time around. Well, that's nice. Thank you. It's good to hear somebody say a good word about the BIA, especially an audience from your side. Thank you very much. Thank you both for the argument. The case disargued will be submitted. The next case on the calendar is – for oral argument is Hamakahi v. U.S. Thank you.
judges: Reinhardt, Thomas, Clifton